FILED
JAN 2 5 2018
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DESMOND DIMETRIUS HARDESTY,<br><br>Defendant. | CR 17-95-BLG-SPW<br><br>OPINION & ORDER |

Defendant Desmond Dimetrius Hardesty is charged with Receipt and Possession of Child Pornography. (Doc. 2). He has moved to suppress evidence under the Fourth Amendment and Fifth Amendment. (Doc. 19).

On January 19, 2018, the Court held an evidentiary hearing. The Court heard testimony from Montana State Probation and Parole Officers Sean Daly and Josh Congleton. Having read and reviewed the parties' submissions and having heard the testimony of the witnesses noted above, the Court DENIES Hardesty's motion.

I. **Statement of Facts**

A. **Hardesty's conditions**

In January 2006, Judge Molloy sentenced Hardesty to 51 months of imprisonment and three years of supervised release for receipt and possession of

1

child pornography. (*See* CR-05-30-M-DWM, Doc. 28). In March 2007, Hardesty received 10 years suspended for felony Sexual Assault in Montana state court for assaulting his minor daughter. (Doc. 23-1). The state sentence contained 46 conditions and was ordered to run consecutive to his federal sentence. (*Id.*). The conditions, in relevant part, provided that:

1. The Defendant be placed under the supervision of the Department of Corrections, subject to all rules and regulations of the Adult Probation and Parole Bureau.

2. The Defendant will not own, possess, or be in control of any firearms or deadly weapons, including black powder, as defined by state or federal law. The Defendant will not possess chemical agents such as O.C. spray.

3. Upon reasonable suspicion, as ascertained by the Probation and Parole Officer, the Defendant's person, vehicle, and/or residence may be searched at any time, day or night, without a warrant by a Probation & Parole Officer, ISP Officer or a Law Enforcement Officer (at the direction of the Probation & Parole/ISP Officer). The Defendant may also be searched at his place of employment.

. . .

24. The Defendant will enter and successfully complete sex offender treatment with an MSOTA clinical member or associate member with supervision, or equivalent, who is approved by the State and the supervising officer and at his/her expense. The Defendant shall abide by all treatment rules and recommendations of his/her treatment provider.

...

33. The Defendant shall not have access to the Internet without prior permission from his supervising officer and sex offender therapist. If Internet access is allowed, the Offender must allow the DOC to install

2

rating control software and conduct random searches of the hard drive for pornography or other inappropriate material nor shall s/he have on any computer s/he may own, any software that is intended for data elimination, encryption or hiding data.

34. The Defendant will not access or have in their possession or under their control any material that describes or depicts human nudity, the exploitation of children, consensual sex acts, non-consensual sex acts, sexual acts involving force or violence, including but not limited to; computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc., without prior written approval of his supervising officer and therapist. The Defendant will destroy or relinquish any such material that he currently has in his possession[.]

. . .

37. The Defendant will not have a cell phone, or other such technology/device, with photo, video, or Internet capabilities allowed. If a cell phone is used, all bills and records will be made available to the supervising officer.

(Doc. 23-1).

Hardesty's federal sentence concluded in March 2012, and his state supervision began. In addition to the above conditions, in October 2012, he also agreed to the following relevant State of Montana Probation and Parole Bureau conditions:

1. My residence must be approved by a Probation/Parole Officer. I will not change my place of residence without first obtaining written permission from a Probation/Parole Officer. I will make my home open and available for Officer to visit or search upon reasonable suspicion. I will not . . . refuse to open the door to my residence when requested.

. . .

3

4. I will personally report to a Probation/Parole Officer as directed. I will submit written monthly reports on forms provided. I will make myself available to Probation/Parole Officers as requested.

5. I will not use, own, possess, transfer, or be in control of any firearms, ammunition (including black powder), or weapons[.]

6. I will obtain permission from a Probation/Parole Officer before financing or purchasing an automobile, real property, or engaging in business. I will not go into debt without an Officer's permission. Victim restitution, child support, fines and fees will be my priority financial obligation.

7. Upon reasonable suspicion, as ascertained by a Probation/Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, including my place of employment, without a warrant by a Probation/Parole Officer, ISP Officer, or Law Enforcement Officer (at the direction of the Probation/Parole/ISP Officer). Any illegal property or contraband will be seized and may be destroyed.

. . .

9. I will not possess or use illegal drugs. I will not be in control of or under the influence of illegal drugs, nor will I have in my possession any drug paraphernalia.

. . .

12. I will not gamble.

. . .

27. The Defendant will enter and successfully complete sexual offender treatment with a MSOTA clinical member or associate member . . . at the Defendant's expense. The Defendant shall abide by all treatment rules and recommendations of the treatment provider.

. . .

31. The Defendant will not access or have in his/her possession or under his/her control any material that describes or depicts human nudity, the exploitation of children, consensual sexual acts, non-consensual sexual acts, sexual acts involving force or violence, including but not limited to computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc., without prior written approval of the Probation & Parole Officer and therapist[.]

. . .

33. The Defendant shall not have access to the Internet without prior permission from the Probation & Parole Officer and sexual offender therapist, nor shall the Defendant have on any computer he/she may own, any software that is intended for data elimination, encryption, or hiding data. If Internet access is allowed, the Defendant must allow the Department to install rating control software and conduct random searches of the hard drive for pornography or other inappropriate material.

. . .

40. The Defendant will not have a cell phone, or such other technology/device, with photo, video, or Internet capabilities allowed. If a cell phone is used, all bills and records will be made available to the Probation & Parole Officer.

(Doc. 23-2).

**B. Probation searches and interviews**

In the first week of January 2017, while subject to the conditions above, Hardesty missed a scheduled appointment with his Probation Officer Sean Daly. (Doc. 19-1 at 4). Officer Daly was unsuccessful in contacting Hardesty by telephone to reschedule the appointment, so he decided to visit Hardesty at his residence. (*Id.*)

5

At around 7:00 p.m., on January 11, 2017, Officer Daly and Probation Officer Josh Congleton, went to Hardesty's residence, a fifth-wheel trailer on Hardesty's brother's land, for the home visit. (*Id.* at 7). After Hardesty invited them in, Officer Congleston immediately noticed that Hardesty was watching Netflix, a streaming service that requires an internet connection, in violation of Condition No. 33. (Doc. 19-1 at 7, 8, 45). Officer Daly asked Hardesty if there were any additional violations in the residence, to which Hardesty responded there were not. (*Id.* at 11). Officer Daly noticed numerous data devices in plain view, including laptops and cell phones, which presented possible violations of Condition No. 40. (*Id.* at 7). Hardesty told Officer Daly he had not called, a violation of Condition No. 4, because he did not have a cell phone, but Officer Daly observed a brand new phone in the residence. (*Id.*).

Based on these plain view violations, Officer Daly advised Hardesty that he and Officer Congleton were going to search the residence. (*Id.* at 11). During the search, Officer Daly saw documents on the kitchen table indicating that Hardesty had received a settlement, but had failed to pay his sex offender therapist bill, in violation of Condition No. 6 & 27. (*Id.*). The officers also found narcotics and drug paraphernalia in violation of Condition 9, ammunition and a tactical knife, in violation of Condition 2, lottery tickets, in violation of Condition 12, and approximately three hundred pages of handwritten pornographic content, in

violation of Condition 31 and 34. (*Id.* at 22; Doc. 23-2 at 1). Officer Daly asked Hardesty if there was anything else in the residence related to Hardesty's previous child pornography charge. (Doc. 19-1 at 32). Hardesty said there might be, but it was old and related to his 2007 charge, in violation of Conditions 31, 34. (*Id.*).

Officer Congleton contacted the Livingston Police Department, who arrested Hardesty on a narcotics charge, seized the narcotics, and transported Hardesty to the Park County Detention Center. (*Id.*). Officer Daly locked the trailer and turned over the keys and Hardesty's cell phone to Hardesty's brother. (*Id.* at 26).

Officer Daly testified that he returned to his office that night and reviewed the written stories seized from Hardesty's residence. He discovered information about exchanging pornography with adult males, sex acts with children that included bleeding, pain and suffering, and sexually assaulting relatives. The next day, January 12, 2017, Officer Daly contacted the FBI to determine whether the stories constituted a crime. He testified that the FBI advised him the writings were protected by the First Amendment. That day, Officer Daly scanned and sent some of the stories to Hardesty's sex offender therapist. Daly testified that upon reviewing the stories, Hardesty's sex offender therapist advised Officer Daly that Hardesty was terminated from sex offender treatment, resulting in a violation of Condition Nos. 24 and 27.

On January 13, 2017, Park County Sheriff's Detective Greene told Officer Daly that a Cadillac was parked outside Hardesty's residence. (Doc. 23-3 at 1). Hardesty had previously told Officer Daly that he did not own any vehicles, so Officer Daly went to the Detention facility to ask about the car. (*Id.*). After some discussion, Hardesty told Daly he had purchased the car, in violation of Condition 6. (Doc. 19-1 at 29). Based on Hardesty's comments that he might have old child pornography images, the handwritten child pornography stories, and the car violation, Officer Daly decided to search the car and search the residence again. (Doc. 19-1 at 74; 76). Officer Daly asked Hardesty to call his brother who agreed to meet the officers and unlock the trailer. (*Id.* at 74). Livingston Police Department Officer Andrew Emmanuel accompanied Officers Daly and Congleton to the Hardesty residence. Detective Harris also arrived during the search and waited outside the trailer.

Hardesty's brother unlocked the trailer and the car. Nothing was found in the car. In the trailer, Officer Daly found three laptop computers, two thumb drives, a digital camcorder, assorted power cords, six smart phones, one flip phone, two DVD-R's, a SanDisk micro adapter, three SIM cards, and an Amazon Kindle. (Doc. 23-3 at 2). Officer Daly discovered child pornography images on the hard drive of one laptop and on one of the thumb drives. (*Id.*). He stopped the search and requested that Detective Harris confirm that a new crime had been found.

(*Id.*). Detective Harris viewed the images, confirmed it was evidence of a new crime, and the search resumed. (*Id.*). After the search, Detective Harris indicated that he had no interest in pursuing charges against Hardesty, and did not seize the computers. (*Id.*). Officer Emmanuel ran a drug dog through the trailer and the dog did not hit on anything inside. (*Id.*). Officer Daly seized the electronics and secured them at Bozeman Probation and Parole. (*Id.*).

On January 16, 2017, Officer Daly spoke with Hardesty at the Park County jail regarding the new violations. (*Id.* at 75). Hardesty admitted that he owned most of the items confiscated on January 13, 2017. (*Id.*). He also told Officer Daly that the digital camcorder had pornography of him and an adult female having sex on it. (*Id.*).

Hardesty was indicted for receipt and possession of child pornography on July 24, 2017. (Doc. 1). He moves to suppress the evidence probation seized from his residence on January 13, 2017, and the statements he made to probation officers on January 11 and 13, 2017. (Doc. 19). The government concedes that Hardesty should have received *Miranda* warnings before his January 11 and 13, 2017, in-custody interviews. (*See* Doc. 23 at 16). Accordingly, the Court will address only Hardesty's Fourth Amendment arguments.

## II. Legal Standard

Warrantless searches inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). There are two general exceptions to the warrant requirement for home searches: exigency and emergency. *U.S. v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005). The emergency exception applies to emergency situations that threaten life or limb. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). The exigent exception applies when officers have probable cause to believe a crime has been or is being committed and a reasonable belief that their entry is necessary to prevent the destruction of relevant evidence, escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. *Hopkins*, 573 F.3d at 763.

There is a third exception to the warrant requirement in cases involving a probationer subject to a search condition. A warrantless search of a probationer's home does not violate the Fourth Amendment if, after evaluating the circumstances of the particular case, the Court determines the search was "reasonable." *United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016). In doing so, the Court balances, "on the one hand, the degree to which [the search] intrudes upon an individual's privacy, and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *U.S. v. King*, 736 F.3d 805, 808 (9th Cir. 2013) (quoting *U.S. v. Knights*, 534 U.S. 112, 119 (2001)). The probation

search condition is "a salient circumstance" in the balancing of interests. *King*, 736 F.3d at 808 (citing *Knights*, 534 U.S. at 118). So, too, is the government's interest in protecting the public from probationer recidivism, discovering criminal activity, and a probationer's successful completion of probation. *King*, 736 F.3d at 809. Before an officer may conduct a warrantless search of a probationer's home, however, the officer must have probable cause to believe the probationer actually lives at the home searched. *U.S. v. Mayer*, 560 F.3d 948, 957 (9th Cir. 2009).

The constitutionality of the search of Hardesty's trailer turns on Hardesty's probationer search exceptions because neither exigent nor emergency circumstances were present when the search occurred.

### III. Officer Daly and Congleston's search of Hardesty's trailer on January 13, 2017, did not violate Hardesty's Fourth Amendment rights.

To determine whether the search was reasonable, the Court must weigh Hardesty's privacy interests against the government's legitimate interests. *King*, 736 F.3d at 808.

Hardesty's privacy interest is on one side of the balance. As a probationer, he has a lower expectation of privacy than someone who has completed probation or who has never been convicted of a crime. *Lara*, 815 F.3d at 610. But his privacy interest is higher than that of a parolee's. *Id.* at 610 (citing *Samson v. California*, 547 U.S. 843, 850 (2006)). Hardesty's privacy interest is further reduced, however, due to the fact that he was on probation for sexual assault,

11

undoubtedly a particularly "serious and intimate" violent offense, *Lara*, 815 F.3d at 610, resulting in a "small" expectation of privacy. *King*, 736 F.3d at 809.

Turning to Hardesty's search conditions, the language permits "a Probation & Parole Officer, ISP Officer or a Law Enforcement Officer (at the direction of the Probation & Parole/ISP Officer" to search Hardesty's residence based on "reasonable suspicion," "at any time, day or night." (Docs. 23-1; 23-2). Although a probationer's privacy interest is not determined solely by the search condition, the search condition's specific language is given considerable weight. *See King*, 736 F.3d at 810 (upholding suspicionless search of violent probationer subject to a suspicionless search condition); *Lara*, 815 F.3d at 610-11 (suspicionless search of cell phone conducted pursuant to suspicionless search condition was not reasonable because condition did not specifically mention cell phones); *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) (construing search condition to apply only to defendant's "residence" because of search condition's "clear and explicit language.") (overruled on other grounds).

On the other side of the balance is the government's legitimate interests in combating recidivism, discovering criminal activity, and the reintegration of probationers. *King*, 736 F.3d at 809. The strength of these interests depends on the degree to which the government has a specific reason to suspect that a probationer is reoffending or jeopardizing his reintegration into the community.

*Lara*, 815 F.3d at 612. The less serious the allegation is, the less strength these interests have in justifying the search. *Lara*, 815 F.3d at 612 (contrasting the *Knights* and *King* probationers, who officers suspected of arson and homicide, respectively, from the *Lara* probationer, who had missed a meeting with his probation officer). The United States Supreme Court has held that a probation officer's reasonable suspicion that a probationer subject to search conditions may be committing criminal acts justifies the search of the probationer's person, residence, or vehicle. *Knights*, 534 U.S. at 121.

On the balance, the Court holds the search of Hardesty's home on January 13, 2017, pursuant to his status as a probationer was reasonable. The government had a strong interest in searching Hardesty's residence for laptops and other electronic devices in light of the graphic child sex abuse writings Officer Daly had discovered, the fact that Officer Daly had observed a number of laptops, Hardesty's prior convictions, and Officer Daly's suspicion that Hardesty was again engaging in similar behavior.

The government also had a strong interest in "apprehending violators of the criminal law, thereby protecting potential victims." Hardesty had a prior federal conviction for possessing child pornography and was on supervision for sexually assaulting his minor daughter. These are extremely serious offenses with vulnerable victims. Officer Daly testified that his concerns were raised

considering the violent and graphic depiction of child sexual abuse in the writings that he believed Hardesty had authored. He testified he had specific reason to suspect that Hardesty was reoffending considering Hardesty's dishonesty regarding the violations discovered on January 11, 2017, and his admission that he may still have "old" child pornography on his computer.

The government's interest in discovering additional criminal activity and preventing the destruction of evidence was also strong where Hardesty admitted that "old" child pornography might be found in the trailer. This is particularly true where Hardesty's conditions allowed officers to search his "person, property, premises and vehicle at any time [day or night]" with reasonable suspicion that he had violated his conditions of release. This condition lowered his expectation of privacy. Considering that Hardesty had a previous conviction for possessing child pornography, combined with the fact that Officer Daly believed Hardesty authored the writings, the Court finds that it was reasonable for Officer Daly to believe additional evidence or violations would be found in Hardesty's trailer.

Lastly, Hardesty argues that Officer Daly acted as a stalking horse for law enforcement, who was intent on obtaining evidence of child pornography from Hardesty's residence. A probation officer acts as a "stalking horse" if he conducts a probation search on the prior request of, and in concert with, law enforcement officers. *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir.), *cert. denied*,

488 U.S. 866 (1988); *Smith v. Rhay*, 419 F.2d 160, 162-63 (9th Cir. 1969). Collaboration between a probation officer and police, however, does not necessarily render a probation search unlawful. *See United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991) (parole officer was not a stalking horse simply because police helped her locate parolee); *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir. 1985) (fact that police investigation preceded parole search does not render the search a subterfuge); *United States v. Gordon*, 540 F.2d 452, 453 (9th Cir. 1976) (finding a lawful probation search even though Narcotics Task Force agents accompanied the probation officer to expedite the search).

The appropriate question is whether the probation officer used the probation search to help the police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives. *Harper*, 928 F.2d at 897. A probation officer is not a "stalking horse" if he initiates the search in the performance of his duties as a probation officer. *Jarrad*, 754 F.2d at 1454.

The Court finds nothing in the record in this case to suggest that this search was not conducted in a proper manner and for a proper purpose by Officer Daly. On the contrary, the evidence demonstrates that the search on January 13, 2017, was undertaken for legitimate, probation objectives.

15

First, according to Officer Daly's testimony, on January 11, 2017, the police were called to the residence *after* he and Officer Congleston discovered illegal narcotics in Hardesty's residence. Both probation officers testified that this was in compliance with their office policy to contact law enforcement when they find a crime or what they believe is a crime. In addition to the illegal narcotics, Officer Daly discovered hand written notes found under Hardesty's bed, detailing graphic child sexual abuse, which, he testified, ultimately moved him to search Hardesty's trailer again on January 13, 2017.

Importantly, Officer Daly did not review the written stories seized from Hardesty's trailer in detail until the night of the 11th and the next day, January 12, while in his office. Officer Daly testified that upon reviewing the notes, which detailed trading pornography with other adult males, sadistic child sexual abuse, and Hardesty sexually assaulting his own sister, he became concerned that additional violations existed in Hardesty's residence.

Specifically, he was concerned that Hardesty possessed pornography on the electronics Officer Daly had observed in the trailer, and was possibly exchanging pornography with others using the computers. Officer Daly testified that his concern was heightened considering that Hardesty had told Officer Daly after his arrest on January 11, 2017, that there may be "old" child pornography on a thumb drive in his trailer. Notably, Officer Daly's concerns were raised notwithstanding

16

the fact that the FBI had advised him that possessing the stories was not a crime. It was these concerns, in addition to learning that Hardesty purchased a car without his consent, which prompted Officer Daly to return to Hardesty's trailer to search for additional violations, in addition to searching Hardesty's car. The Court finds that there is no evidence in the record that Officer Daly's January 13, 2017, search was prompted or suggested by outside law enforcement.

Second, the Court finds Officer Daly had no ulterior motives when he asked the police to back him up during the January 13, 2017, search. Officers Daly and Congleston testified that they requested a police assist at Hardesty's trailer for safety reasons. According to Officer Daly, Hardesty's brother's house, where Hardesty's trailer was located, is a known drug house, and the Hardesty family had frequent contact with law enforcement. For these reasons, Officer Daly requested back up. Hardesty's argument that Park County Detective Harris accompanied Officer Daly to the trailer because Detective Harris was investigating Hardesty for child pornography is refuted by Officer Daly's testimony that he did not request any particular detective. In fact, after viewing the child pornography to confirm criminal activity, Detective Harris abstained from seizing the computers for his own investigation.

There is simply no evidence in the record indicating that the police used the probation officers to evade the usual probable cause and warrant requirements to

17

search Hardesty's trailer. The Court finds that Officer Daly initiated the search in the performance of his duties as a probation officer, not as a stalking horse for the police.

Considering all of these factors, the Court concludes that the January 13, 2017, search of Hardesty's trailer was reasonable under the Fourth Amendment.

### III. Conclusion

For the reasons discussed above, Hardesty's Motion to Suppress based on the Fourth Amendment (Doc. 18) is DENIED.

DATED this 25th day of January, 2018.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge